**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

Claudia BORECKY; and Mariateresa THIERY,

*Plaintiffs*,

v.

COUNTY OF NASSAU; Bruce BLAKEMAN in his official capacity as County Executive of the County of Nassau; and Patrick J. RYDER in his official capacity as Commissioner of the Nassau County Police Department,

*Defendants*.

Case No.

**COMPLAINT**

---

### INTRODUCTION

1. Nassau County has enacted a ban on almost all speech, assembly, and expressive conduct outside of nearly 1,000 houses of worship without any record of violence or criminal activity within the County to justify such a sweeping restriction on First Amendment protected activity.

2. Defendant County of Nassau passed and signed into law on January 12, 2026, Local Law No. 6-2025, the Nassau Buffer Law.

3. The Nassau Buffer Law is a sweeping restriction on First Amendment activities that take place before, during, and after any services, events, or meetings at houses of worship—whether religious in nature or not—and operates in two ways.

4. First, the law's Fixed Buffer Provision prohibits numerous forms of speech and expressive conduct within 35 feet of an entrance or driveway to a house of worship, including any public sidewalks, roads, and parks.

1

5. Second, the law's Floating Bubble Provision makes it unlawful to engage in most speech and expressive conduct by knowingly approaching another person within ten feet without their express consent when within 100 feet of an entrance to a house of worship.

6. Together, the law's two provisions stifle speech outside houses of worship by restricting, for large periods of time, expressive activity within 35 feet of houses of worship and speech targeted at other individuals without their express consent between 100 and 35 feet of houses of worship.

7. Individuals who violate the Nassau Buffer Law face misdemeanor criminal penalties and risk up to one year of imprisonment and/or a fine up to $250.

8. The Nassau Buffer Law strikes at the heart of New Yorkers' right to express their views—no matter how controversial—in public, including leafleting and peaceful political protest on public sidewalks.

9. Further, the law does nothing to protect religious freedom, as existing federal and state laws already protect worshippers from obstruction, intimidation, interference, violence, and threats of force when entering and leaving houses of worship.

10. Instead, the Nassau Buffer Law has stifled speech, assembly, and expressive conduct across Nassau County, as individuals and organizations fear arrest and jail time for exercising their First Amendment rights, including passing out leaflets or marching past a house of worship.

11. Although places of worship and religious organizations often wade into matters of deep public concern involving social issues, the Nassau Buffer Law silences individuals who seek to directly engage in public debates with these institutions. The law even prohibits public worship, prayer circles, and other public or mobile expressions of devotion that may aim to challenge or

2

engage in religious dialogue outside of a house of worship. And the law prevents people, like Plaintiffs, from trying to lobby their fellow congregants on the way to or from a service, whether on a matter of public concern or a dispute within the congregation.

12.    Plaintiffs Claudia Borecky and Mariateresa Thiery are Nassau County residents who have organized and attended protests, rallies, vigils, demonstrations, and other actions in Nassau County, including in locations near or outside of houses of worship.

13.    In December 2025, Ms. Borecky, in her capacity as the founder and Executive Director of the South Shore Women's Alliance, organized a leafleting action outside of nine churches in Nassau County. After the Catholic Bishops of New York State issued a statement ("Bishops' Statement" or "Statement") in support of immigrants and opposing mass deportation, Ms. Borecky planned for demonstrators to hand out copies of the Statement outside these churches to churchgoers going to and leaving Mass and to engage attendees in one-on-one conversations about their faith and immigration.

14.    Ms. Thiery was also planning to attend this demonstration. Motivated by their Catholic faith, both Ms. Borecky and Ms. Thiery wanted to raise awareness about the Statement among parishioners, especially given the ongoing federal crackdown on immigrant communities. They also wanted to directly reach parishioners to discuss their faith, imperatives to protect and welcome immigrants in the Catholic tradition, and to encourage others to help Nassau immigrant communities.

15.    This action was scheduled to take place on Sunday, December 21, 2025, but after the Nassau County Legislature passed the Nassau Buffer Law on December 17, 2025, the action was cancelled. Ms. Borecky and Ms. Thiery both believed that the law was in effect and prohibited their leafleting and speaking to parishioners outside of churches.

16.    Ms. Borecky and Ms. Thiery both believe they have no other avenue to communicate their message and wish to carry out the planned action to distribute the Bishops' Statement and leaflet outside of churches in Nassau County before and after Mass. But Ms. Borecky and Ms. Thiery fear arrest as well as criminal prosecution and sanctions under the Nassau Buffer Law and have therefore held off on carrying out the leafleting while the law remains in effect.

17.    By broadly criminalizing protected speech, peaceful assembly, and expression, including speech on public sidewalks that is directly responsive to events or meetings occurring inside houses of worship, the Nassau Buffer Law violates the First Amendment of the United States Constitution and Article 1, Sections 8 and 9 of the New York Constitution, on its face and as applied to Plaintiffs. Given the lack of any record of obstruction, interference, or unlawful conduct outside of places of worship in Nassau County, the government's asserted interests in religious safety cannot outweigh such broad speech restrictions.

18.    The Nassau Buffer Law is also as vague as it is expansive, conferring unbounded discretion on police to enforce the law in an arbitrary and discriminatory manner, in violation of the Due Process Clause of the Fourteenth Amendment and Article 1, Section 6 of the New York State Constitution.

19.    Plaintiffs seek a declaratory judgment that the Nassau Buffer Law is unconstitutional and a preliminary and permanent injunction enjoining enforcement of the law.

**PARTIES**

20.    Plaintiff Claudia Borecky is a resident of Nassau County who organizes and attends protests, vigils and other demonstrations and actions, including leafleting, in the County. As detailed further below, Ms. Borecky has been chilled in her speech and expressive conduct and

4

would engage in her planned speech and activity but for fear of arrest, criminal prosecution, and sanctions due to the Nassau Buffer Law.

21.      Plaintiff Mariateresa Thiery is a resident of Nassau County who attends protests, vigils and other demonstrations and actions, including leafleting, in the County. As detailed further below, Ms. Thiery has been chilled in her speech and expressive conduct and would engage in her planned speech but for fear of arrest, criminal prosecution, and sanctions due to the Nassau Buffer Law.

22.      Defendant County of Nassau ("the County") is a duly incorporated county of the State of New York, whose Local Law 6-2025 ("Nassau Buffer Law") is the subject of this lawsuit seeking injunctive and declaratory relief. The defendant County is a "person" within the meaning of 42 U.S.C. § 1983, and its officials, agents and employees have acted, or will act, under color of state law as to the matters alleged herein.

23.      Defendant Bruce Blakeman is the County Executive of the County of Nassau and is named in his official capacity. Defendant Blakeman signed the Nassau Buffer Law into law after its passage by the Nassau County Legislature.

24.      Defendant Patrick J. Ryder is the Commissioner of the Nassau County Police Department ("NCPD") and is named in his official capacity. Defendant Ryder leads the NCPD and is responsible for enforcing the Nassau Buffer Law.

**FACTUAL ALLEGATIONS**

**Nassau County Passes a Broad Buffer Zone Law With No Record of Criminal Activity Outside the County's Houses of Worship.**

25.      While the legislative record underlying the Nassau Buffer Law is scant—comprising a mere nineteen minutes of discussion across two legislative meetings—the history that does exist shows no demonstrated record of any public safety threats or criminal activity

5

outside of the County's houses of worship, including during protests or other activities protected by the First Amendment.

26.    Instead, the legislative record clearly shows that the legislature passed the Nassau Buffer Law in response to two events that occurred *outside* of Nassau County: (1) a protest outside Park East Synagogue in Manhattan, New York on November 19, 2025 and (2) the mass shooting during a Hanukkah celebration on Bondi Beach in Sydney, Australia on December 14, 2025.

27.    During the December 8, 2025, meeting of the County of Nassau Legislature's Committee on Public Safety, Legislator Mazi Melesa Pilip made clear she was introducing the Nassau Buffer Law in response to the protest outside of Park East Synagogue. That protest was advertised as, "No Settlers on Stolen Land" and, according to the protest organizers' public statements, aimed at expressing opposition to "recruit[ing] American settlers to illegally occupy stolen Palestinian land."

28.    In that meeting and a subsequent meeting of the full County of Nassau Legislature on December 17, 2025, Legislator Pilip indicated that she disagreed with the viewpoints expressed at that—in her view—"disturbing" protest, suggesting that such speech is "terrorist supporters spreading hate and attacking our Jewish community." Although the protest outside Park East Synagogue took place in New York City, the Nassau Buffer Law widely restricts speech and expressive conduct outside places of religious worship in Nassau County before, during, and after any and all services, events and meetings, as further detailed *infra*.

29.    While the introduction of the Nassau Buffer Law was prompted by the protest outside the Park East Synagogue, legislators were also motivated to pass the law in response to the Bondi Beach mass shooting on December 14, 2025. Legislator Pilip noted at the December 17, 2025, legislative hearing that the mass shooting saddened her and suggested it was another reason

for the law to be passed. Similarly, Legislator Michael Giangregorio stated that he supported the Nassau Buffer Law because he "could not imagine what happened . . . in other countries happening here," likely referencing the Bondi Beach mass shooting that had occurred just three days prior. And Legislator John J. Giuffré stated that the bill was "a way of . . . combating hatred against Jewish people."

30.    During the December 17, 2025, legislative hearing, legislators also emphasized that Nassau County is "the safest county in the country." Several legislators noted that the Nassau Buffer Law was meant to be "proactive," rather than responding to any particular threat or issue in Nassau. Not one legislator cited any incidents of violence or criminal activity targeted at worshippers in Nassau County in either legislative hearing.

31.    The only public testimony concerning the law was from a member of the public during the December 8, 2025, meeting; the person expressed concern that the law would infringe, "on a one-sided basis, someone's freedom of speech, freedom of assembly, and the right to speak against the atrocities that are happening to people who look like me."

32.    At the December 17, 2025 legislative hearing, Legislator Arnold W. Drucker, who identified himself as a trained attorney on the record, tacitly acknowledged that the Nassau Buffer Law violates the Constitution, but that he supports it nonetheless because he had "evolved" from a "strict interpreter of our constitution" and now "feel[s] [the law] is necessary" to help him feel safe.

33.    Despite the lack of any evidence of criminal activity, interference, obstruction, or threats of force outside of houses of worship in Nassau County, on December 17, 2025, the Nassau County Legislature voted unanimously to pass the Nassau Buffer Law.

34.    Lawmakers made no findings to support the need for the 35-foot Fixed Buffer

Provision or the Floating Bubble Provision in light of existing state and federal laws that already prohibit obstruction or interference with anyone entering or exiting a house of worship.[1]

35.     On January 12, 2026, Nassau County Executive Bruce Blakeman signed the bill into law, and it became immediately effective. The final version of the law is annexed hereto as **Exhibit A**.

36.     The Nassau Buffer Law makes it unlawful for "any person to demonstrate, picket, protest, distribute literature, display signs, engage in oral advocacy, or other forms of expressive or symbolic conduct, whether conducted individually or in groups, within thirty-five (35) feet of the Entrance Area or Driveway of a Place of Religious Worship." Local Law 6-2025 § 4(b). This "Fixed Buffer Provision" prohibiting protected speech and conduct applies one hour before "the scheduled start of any religious service, community meeting, ceremony, or other congregational, educational or organizational meeting or event," during the aforementioned events, and for one hour after the conclusion of such events. *Id*.

37.     The Law additionally prohibits "any person," when within 100 feet of an entrance to any "Place of Religious Worship," from "knowingly approach[ing] within ten (10) feet of an individual, without such individual's expressed consent, for the purpose of demonstrating, picketing, protesting, distributing literature, displaying signs, engaging in oral advocacy, or other forms of expressive or symbolic conduct, whether conducted individually or in groups." *Id.* § 4(a). Similarly, this "Floating Bubble Provision" prohibiting protected speech and activities applies one hour before "the scheduled start of any religious service, community meeting, ceremony, or other congregational, educational or organizational meeting or event," during the aforementioned events, and for one hour after the conclusion of such events. *Id*.

---

[1] *See e.g.*, 18 U.S.C. § 248(a)(2); N.Y. Penal Law §§ 240.70–71.

38.     A "Place of Religious Worship" is defined as "any church, synagogue, mosque, temple, or other building or location regularly used primarily for religious worship, religious education, or religious services." *Id*. § 3(1).

39.     "Entrance Area" is defined as "any doorway, threshold, entryway, gate ramp, or other point of ingress or egress to a Place of Religious Worship." *Id*. § 3(2).

40.     A "Driveway" is defined as "an entry from a public street to any parking lot in which the Place of Religious Worship has an ownership, easement or leasehold interest or other property right." *Id*. § 3(3).

41.     Criminal liability for violating the Nassau Buffer Law attaches after a person "receiv[es] a verbal, written, or other communicative or expressive instruction, warning or order from" a police officer. *Id*. § 4. The statute grants law enforcement wide discretion in the type of "instruction, warning or order" to give to individuals engaging in expressive activity outside of houses of worship, as well as when and how such communication should be given.

42.     Violation of the Nassau Buffer Law is a misdemeanor punishable by a fine up to $250, imprisonment up to one year, or both. *Id*. § 5.

43.     When both provisions of the Nassau Buffer Law are taken together, individuals in Nassau County may, for example, face imprisonment and/or a fine for simply trying to engage another person in a conversation or distributing literature within 100 feet of a house of worship. Protesters seeking to express their opinions and views in response to non-religious events being held inside houses of worship—including events featuring elected officials or on issues of public concern and non-religious topics—would risk criminal penalties under the law. People organizing marches across Nassau County would need to plan routes around houses of worship, even if marching on public streets and sidewalks, or else risk arrest and criminal prosecution.

9

44.     Further, the law restricts public assembly within 35 feet of houses of worship that are intended to convey messages in support of the houses of worship themselves or the causes that they support. Similarly, under the law, houses of worship could be prohibited from organizing events on adjacent public property if those events involve displaying signs, oral advocacy, or other forms of expressive or symbolic conduct. Even certain silent expression, such as standing within 35 feet of a house of worship while wearing a shirt with a protest symbol or displaying a sign advocating a political, religious or humanitarian message, would be banned during many times by the law.

45.     The expansive reach of the Nassau Buffer Law—and the broad discretion delegated to the police in enforcing the law—has already chilled speech and assembly in Nassau County.

**The Nassau Buffer Law Will Infringe Upon Speech on Public Streets and Sidewalks Adjacent to Hundreds of Places of Worship.**

46.     By broadly restricting speech and expressive conduct within a 35-foot radius of houses of worship and speech directed at individuals within 100 feet of houses of worship, the Nassau Buffer Law curtails speech and expressive conduct across a wide swath of public sidewalks, streets, and other traditional public fora across Nassau County.

47.     With approximately 980 houses of worship in Nassau County (*see* Fig. 1), the Nassau Buffer Law implicates speech and expressive conduct on hundreds of streets and/or sidewalks in the County. This is because houses of worship in Nassau County often have at least one of two features that cause the law to restrict speech on public fora: (1) a "Driveway" that connects a public street to a house of worship and is often next to a sidewalk, and from which the 35-foot Fixed Buffer Provision applies, *see* Local Law 6-2025 §§ 3(3), 4(b); and/or (2) an "Entrance Area" that directly opens onto a public sidewalk and road, and from which the 35-foot Floating Bubble and 100-foot Fixed Buffer Provisions apply, *see id*. §§ 3(2), 4(a)–(b).

10



**Figure 1. Map of Houses of Worship in Nassau County.**

48.      In more populous towns, the law threatens to make entire streets impassable for marches and other forms of moving speech. For example, in Merrick, New York, nine houses of worship are close in proximity to the Long Island Railroad Station in town, where Plaintiffs gather monthly for Stop the Chaos protests (*see* Fig. 2). Forming a loose circle around the train station, the density of houses of worship makes it difficult for individuals to meet at the train station and

11

march to another location or to engage in moving conversations with others while canvassing or leafleting.



**Fig. 2. Map of Nine Houses of Worship Around the Merrick, New York Train Station.**

49. Similarly, in Hempstead, New York, thirty-four houses of worship are located closely together in one area of town, including eight houses of worship that line six blocks of North Franklin Street (*see* Fig. 3). The density of houses of worship in Hempstead makes it very difficult, if not impossible, to march down many streets during specific times of day or of the week. Those who may wish to canvass or leaflet passersby would also have to be acutely aware of their distance from any house of worship, all while trying to walk and talk with others.

12



Esri Community Maps Contributors, © OpenStreetMap, Microsoft,
Esri, TomTom, Garmin, SafeGraph, GeoTechnologies, Inc, METI/
NASA, USGS, EPA, NPS, US Census Bureau, USDA, USFWS

**Fig. 3. Map of Eight Houses of Worship on N. Franklin Street in Hempstead, New York.**

50.    In Freeport, New York, ten houses of worship dot streets north of Sunrise Highway (*see* Fig. 4), making planning any march route from the west side of town to Northeast Park difficult, if not largely impossible during certain days and times. Similarly, south of Sunrise Highway, six houses of worship make moving protests on Pine Street, Church Street, and West Merrick Road burdensome. Canvassing and leafleting of passersby are also significantly impeded by the Nassau Buffer Law in Freeport.



Esri Community Maps Contributors, © OpenStreetMap, Microsoft,
Esri, TomTom, Garmin, SafeGraph, GeoTechnologies, Inc, METI/
NASA, USGS, EPA, NPS, US Census Bureau, USDA, USFWS

**Fig. 4. Map of Sixteen Houses of Worship in Freeport, New York.**

51.    The Nassau Buffer Law's sweeping restrictions on speech and expressive conduct in traditional public fora is not only vast geographically but is also far-reaching in terms of time in effect. Houses of worship function as *de facto* community centers across Nassau County, providing not only religious services and a place for worship, but a variety of services and programming which, at any particular time, could be religious, political, educational or community-oriented in nature.

14

52.     In any given week, houses of worship across Nassau County host a plethora of religious services, community meetings, ceremonies, and other events that would trigger the application of the Fixed Buffer Zone and Floating Bubble Zone provisions. *See* Local Law 6-2025 § 4(a). Some houses of worship also offer classes, schools, clubs, and community services (*e.g.*, food pantries). Some houses of worship even permit their premises to be booked for events, such as family and athletic events.

53.     For example, a Catholic church—defined broadly to include any building on parish property such as the church itself and any other buildings—may have, on a recurring weekly basis: Mass at various times throughout the week, Confession, Communion, Baptisms, Weddings, funerals, as well as meetings of community groups, religious education classes, youth group meetings, and, if applicable, the activities of any religious school or early childhood education center on parish property. Such a church may also have services or other events during holydays of obligation.

54.     Similarly, synagogues typically host Shabbat service, minyan and/or Torah Study on a recurring weekly basis as well as additional religious services for holidays. A synagogue can also run, on a regular basis, a religious school, a variety of adult and youth programming, and early childhood education centers throughout the year.

55.     Likewise, mosques typically host weekly religious services on Fridays and hold congregational prayers five times a day in addition to allowing worshippers to pray in the mosque individually throughout the day, in accordance with Islam's required five daily prayers. Daily prayer times vary throughout the year but always start before sunrise and end past sunset. In addition to prayer services, a mosque can host a variety of recurring programs, such as religious school, pre-schools, periodic art and children's programs, and additional programming during

15

Islamic holy months and holidays.

56.    Each service, meeting, or event at a house of worship restricts speech for hours at a time. When multiple services, meetings, or events are held on one day, the Law's restrictions on speech could apply for the entire day. Across one week, the law could leave only very narrow hours for individuals to engage in speech in traditional public fora outside houses of worship. The law could even preclude most speech during reasonable hours before and after normal business hours and during much of the weekend.

57.    All across the County, the Nassau Buffer Law threatens individuals' right to assemble peacefully and to engage in protected speech and expressive conduct, even though the County legislature has failed to show any evidence of a need for such infringements on these fundamental rights.

**The Nassau Buffer Law has had a Severe Chilling Effect on Plaintiffs' Speech.**

58.    The effects of the Nassau Buffer Law on speech have already been felt by Ms. Borecky and Ms. Thiery.

**<u>Claudia Borecky</u>**

59.    Plaintiff Claudia Borecky organizes and engages in a variety of protests, rallies, vigils, demonstrations, and expressive actions in Nassau County. She is the founder and Executive Director of the South Shore Women's Alliance (SSWA), President of the Bellmore-Merrick Democratic Club (BMDC), and Co-Director of Long Island Clean Air Water and Soil (CAWS).

60.    In her roles at the SSWA, the BMDC, and CAWS, she has organized protests across Nassau County.

61.    For example, on January 11, 2026, she organized a candlelight vigil in Freeport, New York for Renée Good, the victim of an ICE shooting in Minnesota, as part of her duties in

16

the SSWA. And for the past year, she has organized a monthly rally called Stop the Chaos to raise awareness of specific issues as part of her duties in the BMDC. These protests are held at the Merrick, New York train station on Merrick Avenue and Sunrise Highway, which, as illustrated *supra* in Fig. 2, is surrounded by at least nine places of worship, many of which are about a block away from the station.

62.    Ms. Borecky's activism is motivated in part by her faith as a Catholic. Her faith is a central part of her upbringing and education and guides her views on matters of public concern, including political and social issues. She believes welcoming immigrants and opposing mass deportation is consistent with Christian teachings. In the past, she has attempted to engage Catholic priests on issues of immigration in Nassau County. For instance, she contacted the pastor at the Curé of Ars parish in Merrick, New York to speak at the January 2026 candlelight vigil in Freeport, New York because she thought it was important for Catholic communities to hear from their faith leaders on the issue of immigration enforcement in local communities.

63.    In Ms. Borecky's personal capacity, she has attended various protests, including No Kings Day on June 14, 2025, October 18, 2025, and March 28, 2026, and pro-immigrants' rights protests. In the past few years, Plaintiff Borecky has regularly distributed flyers throughout Nassau County, including at train stations, grocery stores, schools, and protests on public sidewalks.

64.    Ms. Borecky's speech has been chilled and burdened by the Nassau Buffer Law. On November 13, 2025, the Catholic Bishops of New York State issued a Statement titled "For You Too Were Once Aliens..." that expressed support for immigrants' rights and immigrant communities across the United States and opposition to the campaign of mass deportations that is being carried out by the federal government ("Bishops' Statement" or "Statement"). The Statement

17

highlighted Mother Cabrini, the patron saint of immigrants, and invited Catholics to sign a pledge in her honor (the "Cabrini Pledge") to commit prayers and energy to the welcome, protection, promotion, and integration of immigrants.

65.     Normally, statements issued by the New York State Bishops are printed as an insert to the parish bulletin and read out loud during Mass. However, Ms. Borecky believed the Statement may not have been shared due to some pastors' ideological opposition to its contents, and she feared that parishioners attending local churches did not know about the Statement.

66.     In her role as the Executive Director of the SSWA, Ms. Borecky organized a leafleting action to distribute the Bishops' Statement to parishioners outside nine Catholic churches after Mass on Sunday, December 21, 2025, and to engage churchgoers in conversations about their faith and immigration. These nine churches, all located between Massapequa and Merrick in Nassau County, were: (1) Curé of Ars in Merrick, New York; (2) St. Barnabas the Apostle in Bellmore, New York; (3) St. Frances de Chantal in Wantagh, New York; (4) Maria Regina in Seaford, New York; (5) St. Raphael in East Meadow, New York; (6) Sacred Heart in North Merrick, New York; (7) St. William the Abbot in Seaford, New York; (8) St. Rose of Lima in Massapequa, New York; and (9) St. Francis in East Meadow, New York.

67.     Ms. Borecky and the SSWA identified these nine churches for leafleting because they believed the Statement had not been distributed to these churches during Mass, and they wanted to ensure parishioners themselves were aware of the message.

68.     The planned action called for simultaneous leafleting within at least 100 feet, if not 35 feet, of these nine churches' entrances, exits, or driveways because it was important for the action to reach a large number of churches to have its intended impact.

69.     Ms. Borecky and SSWA also believed the action was best conducted in pairs so

that volunteers had each other's support in case of resistance and to reach more people. They hoped the action could occur in one day for easier planning and coordination of volunteers.

70.    Ms. Borecky feels that her Catholic faith commands her to support immigrants' rights. She believes the ongoing federal crackdown on immigration goes against Catholic teachings. At the planned action to distribute the Bishops' Statement, she intended to approach worshippers to share information about the Statement directly with them and to engage in conversations about what their shared faith means in terms of immigration. She intended to ask parishioners to consider what Jesus would do with respect to supporting immigrants since it is her own belief that Jesus teaches Christians to welcome strangers and treat immigrants as neighbors with respect and dignity.

71.    However, after the passage of the Nassau Buffer Law on December 17, 2025, she believed that the law was immediately signed into law by Defendant Blakeman. Due to fear of arrest, criminal prosecution, jail time, and/or fines under the law, Ms. Borecky cancelled the leafleting action.

72.    After the cancellation, Ms. Borecky called the Curé of Ars parish in Merrick, New York to ask if the pastor there would print an insert to the parish bulletin with the Statement for distribution to parishioners during Mass. She and the SSWA heard back from the church's pastor in early January 2026 that the Statement was posted on the parish website but was not distributed during Mass. But when Ms. Borecky checked the church's website after they spoke, she did not see the Statement. On April 1, 2026, she checked the website again and still did not see the Statement posted.

73.    But for the Nassau Buffer Law, Ms. Borecky would organize and participate in this leafleting action as soon as possible. While the law remains in effect, she is chilled in her speech

19

because she fears arrest, criminal prosecution, and criminal sanctions if she carries out the leafleting action. Due to the Nassau Buffer Law, she feels that she has no avenue to communicate her message about the Bishops' Statement directly to parishioners at these nine churches.

74.    Ms. Borecky is concerned not only about the humiliation and criminal consequences of being arrested, but also that others will be too fearful of arrest to join her in communicating the message of the Bishops' Statement during any leafleting action.

75.    Ms. Borecky also intends to attend other protests, rallies and demonstrations in the future. But due to the Nassau Buffer Law, she fears that she could face arrest, criminal prosecution, jail time, and/or fines if a protest marches by or is located near a house of worship. She plans to limit her participation in protests to try to comport with the Nassau Buffer Law, including not attending such actions that take place within 35 feet of houses of worship and otherwise abiding by all orders, instructions, and directions from the police during any protest.

76.    She is additionally worried that other individuals may be similarly chilled and limit their participation in protests, rallies and demonstrations with her in the future and that a decrease in attendance will affect the number of people these actions will reach as well as the messages they send to the public and elected officials.

**Mariateresa Thiery**

77.    Plaintiff Mariateresa Thiery is an active member of the Nassau County community and frequently attends protests, rallies, vigils, demonstrations, and other actions, including leafleting. She has attended and continues to attend No Kings Day rallies and the Stop the Chaos monthly protests organized by Ms. Borecky and the SSWA.

78.    Ms. Thiery is the daughter of Italian immigrants who suffered greatly during the Nazi occupation of Italy. Her parents met in an Italian displaced persons camp in 1947 and later

20

immigrated to the United States for a better future. Because of her family history, and the history of many families like hers who immigrated to the United States seeking safety and the right to live in peace and freedom, Ms. Thiery's activism on behalf of her immigrant neighbors is deeply personal and extremely important to her.

79.     Ms. Thiery is a practicing Catholic. She believes her faith is a call to action to advocate against the ongoing immigration crackdown and mass deportation of immigrants. As a Catholic, her faith counsels her to honor Mother Cabrini, the patron saint of  immigrants, as her guide to serve those finding a way in a new place. She hopes to spread awareness among fellow Catholics to live the message of the Gospel noted in the Bishops' Statement to oppose the increasingly precarious situation for immigrant communities in Nassau.

80.     On November 16, 2025, Ms. Thiery attended a protest outside of the St. Agnes Cathedral in Rockville Centre, New York to raise awareness about the Bishops' Statement. Along with other protestors, she stood on the public sidewalk across the street from the Cathedral entrance and held a sign that called upon churchgoers to honor Mother Cabrini and welcome the stranger. There were no arrests at this protest.

81.     Ms. Thiery's speech has been chilled and burdened since the enactment of the Nassau Buffer Law. She had planned to attend the December 21, 2025, leafleting action organized by Ms. Borecky and the SSWA, which later was cancelled out of fear of arrest, criminal prosecution, and sanctions under the Nassau Buffer Law.

82.     Ms. Thiery had specifically planned to go on that day to Sacred Heart in North Merrick, New York and Curé of Ars in Merrick, New York to approach parishioners to pass out copies of the Bishops' Statement before and after services and to raise awareness of the Cabrini Pledge. She had planned to directly engage parishioners in conversations about what their shared

faith means in terms of welcoming immigrants and to provide resources on ways to help immigrants in local communities if parishioners expressed interest in the pledge and becoming involved in immigration advocacy.

83.     In late January, Ms. Thiery had also planned to participate in a separate action outside of storefront churches in Nassau County. For this action, she intended to approach churchgoers to distribute packets with leaflets and whistles while they were entering and leaving a number of storefront churches in Roosevelt and Freeport, New York to express concern over immigration arrests in Nassau County. The leaflets had information on protecting one's rights when encountering ICE agents, and the whistles were included to alert community members to ICE presence and to form a crowd, bear witness, and express themselves.

84.     However, due to the Nassau Buffer Law, both leafleting actions in which Ms. Thiery had planned to participate were cancelled. Specifically, the Bishops' Statement leafleting action was cancelled by Ms. Borecky and the SSWA, and organizers ceased the planning of the separate leafleting action outside of storefront churches. Storefront churches tend to directly abut a public sidewalk, meaning both provisions of the Nassau Buffer Law would restrict the leafleting action outside such churches.

85.     While the law remains in effect, Plaintiff Thiery is scared of arrest, criminal prosecution, and jail time and/or fines for participating in these and similar expressive activities. Due to the Nassau Buffer Law, she feels as if she has no avenue to communicate her messages about the Bishops' Statement and immigrants' rights directly to worshippers at churches across Nassau County.

86.     Ms. Thiery is concerned not only about the humiliation and criminal consequences of being arrested, but also that others will be too fearful of arrest to join her in communicating her

message about immigrants' rights during any protest.

87.    Plaintiff Thiery also intends to attend other protests, rallies and demonstrations in the future. But due to the Nassau Buffer Law, she fears that she could face arrest, criminal prosecution, jail time, and/or fines if a protest marches by or is located near a house of worship. She plans to modify her participation in protests to try to comport with the Nassau Buffer Law, including not attending or only partially attending protests near houses of worship.

88.    She is also worried that other individuals may be chilled in attending other protests, rallies and demonstrations with her in the future and that a decrease in attendance will affect the number of people these actions will reach as well as the messages they send to the public and elected officials.

### JURISDICTION AND VENUE

89.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, which confers federal question jurisdiction.

90.    Supplemental jurisdiction over the state law claims presented is conferred by 28 U.S.C. § 1367.

91.    This case arises under the First and Fourteenth Amendments to the United States Constitution, Article I, Sections 6, 8, and 9 of the New York State Constitution, and is brought pursuant to 42 U.S.C. § 1983.

92.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**
**Violation of the First Amendment: Freedom of Speech and Assembly (42 U.S.C. § 1983)**

93.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

94.     The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I.

95.     The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the County of Nassau from abridging freedom of speech and assembly.

96.     As described in the preceding paragraphs, the Nassau Buffer Law violates the First Amendment of the U.S. Constitution by unlawfully abridging Plaintiffs' and other speakers' freedom of speech and assembly outside places of worship.

**SECOND CLAIM FOR RELIEF**
**Violation of the Due Process Clause of the Fourteenth Amendment: Void for Vagueness (42 U.S.C. § 1983)**

97.     Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

98.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1.

99.     As described in the preceding paragraphs, the Nassau Buffer Law is void for vagueness under the Fourteenth Amendment of the U.S. Constitution.

24

**THIRD CLAIM FOR RELIEF**
**Violation of Article I, Sections 8 and 9 of the New York State Constitution: Freedom of Speech and Assembly**

100.    Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

101.    Article I, Sections 8 and 9 of the New York State Constitution prohibits the County of Nassau from abridging freedom of speech and assembly.

102.    As described in the preceding paragraphs, the Nassau Buffer Law violates Article I, Sections 8 and 9 of the New York State Constitution by unlawfully abridging Plaintiffs' and other speakers' freedom of speech and assembly outside places of worship.

**FOURTH CLAIM FOR RELIEF**
**Violation of Article 1, Section 6 of the New York State Constitution: Due Process**

103.    Plaintiffs repeat and re-allege the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

104.    Article I, Section 6 of the New York State Constitution guarantees that "[n]o person shall be deprived of life, liberty or property without due process of law." N.Y. Const. Art. I § 6.

105.    As described in the preceding paragraphs, the Nassau Buffer Law is void for vagueness under Article I, Section 6 of the New York State Constitution.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs hereby request that the Court:

A.  Assume jurisdiction over this matter;

B.  Declare that the Nassau Buffer Law violates the First Amendment of the United States Constitution;

C.  Declare that the Nassau Buffer Law violates the Fourteenth Amendment of the United States Constitution;

25

D.  Declare that the Nassau Buffer Law violates Article I, Sections 8 and 9 of the New York State Constitution;

E.  Declare that the Nassau Buffer Law violates Article I, Section 6 of the New York State Constitution;

F.  Preliminarily enjoin Defendants from further violations of constitutional rights by restraining Defendants from enforcing the Nassau Buffer Law;

G.  Permanently enjoin enforcement of the Nassau Buffer Law;

H.  Award Plaintiffs reasonable attorneys' fees and costs;

I.  Grant any other relief the Court deems appropriate.


Dated: April 7, 2026
       New York, New York


                                    Respectfully Submitted,

                                    NEW YORK CIVIL LIBERTIES UNION
                                    FOUNDATION, by:

                                    _____
                                    Jessica Perry


                                    _____
                                    Elizabeth Gyori
                                    Anya Weinstock*
                                    Eman Naga**
                                    Molly K. Biklen
                                    125 Broad St., 19th Fl.
                                    New York, NY 10004
                                    (212) 607-3300
                                    jperry@nyclu.org

                                    *Attorney admission to the E.D.N.Y. forthcoming
                                    **Admission to the New York Bar pending

26